UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LaRIA CREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 2:13-CV-292-PPS-PRC |
| | ) |
| CITY OF GARY, INDIANA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff LaRia Crews is a Gary, Indiana police officer who claims she was the victim of sex discrimination when she was transferred to street patrol position after a confrontation with fellow officer, Pete Sormaz. She has filed this lawsuit against Sormaz, the City of Gary, and Chief of Police Wade Ingram alleging discrimination and retaliation claims based on Title VII of the Civil Rights Act as well as 42 U.S.C. § 1983. The Defendants have moved to dismiss the complaint, arguing Crews has failed to state a claim upon which relief can be granted. The Defendants are partly right. Crews hasn't pled sufficient facts to support certain of her § 1983 claims. Crews's other claims, however, pass muster, so the Defendants' motion [DE 43] is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The facts come from the complaint which I will accept as true for present purposes. Here is what the complaint alleges: LaRia Crews is a Gary, Indiana police officer who, back in 2012, was the Indiana Data Communications Systems Coordinator

for the Administrative Services Division of the department. One of her responsibilities was programming and distributing police radios.

One day, Gary Police Sergeant Pete Sormaz asked Crews to provide him with a radio that was programmed with the department's secure channels. Crews refused. She told Sormaz that, according to standard operating procedure, he needed a written order from Police Chief Ingram before Crews could give him the radio. Sormaz lost his temper and yelled at Crews, demanding the programmed radio by the end of the day. Still steaming, Sormaz went to Ingram and requested that Crews be transferred. Sure enough, later that day, Ingram issued the transfer order sending Crews to a patrol position in the Uniform Services Division. She was replaced at the Administrative Services Division by a less qualified male officer.

Crews thought the transfer was discriminatory so she filed complaints with the Gary Human Relations Commission and the Gary Police Civil Service Commission in February 2013. She also filed a complaint with the EEOC and received a Right to Sue letter on May 28, 2013. Crews claims the City of Gary made a habit of discriminating against female police officers who insisted that their male colleagues follow procedure. She alleges two of other women, Darlene Breitenstein and Shae Russell, faced similar discrimination.

A few months later, a vacancy opened up for an Investigator position in the Juvenile Division of the Police Department's Bureau of Investigation. Crews applied for the spot in August 2013, but didn't get it. First, she was told that she didn't qualify for

the job because she was on light duty due to an injury. That wasn't true. Next she was told that the Department wasn't going to fill the position at all. This also wasn't true because the job ultimately went to a male employee with less seniority. Crews maintains that the Defendants denied her attempt to transfer in retaliation for filing discrimination claims.

Crews filed this suit in August 2013 [DE 1]. Since then, the Complaint has gone through a couple of rounds of amendments as the Defendants pointed out some deficiencies in the first versions of the Complaint and Crews fixed those problems. We are now on the Third, and final, Amended Complaint [DE 38]. The Complaint alleges claims of discrimination and retaliation against the City of Gary, Sormaz, and Ingram based on Title VII and § 1983. Defendants have again moved to dismiss for failure to state a claim [DE 43].

## **DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). However, "[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citation and quotation marks omitted). Although at this stage I still must accept all allegations as true and draw all reasonable inferences in

3

the Crews's favor, I don't need to accept threadbare legal conclusions supported only by conclusory statements. *Iqbal*, 129 S. Ct. at 1949. Crews has to provide enough details about the subject-matter of the case to present a story that holds together. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

As a preliminary matter, Defendants have argued that certain claims, specifically Counts I and III, ought to be dismissed for failing to comply with Federal Rule of Civil Procedure 8. That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants argue that Count I did not provide adequate notice of the basis for the claim because Crews did not specifically cite to Title VII in the allegations. Count III is said to be incomprehensible because Crews cited to more than one constitutional amendment as the basis for her § 1983 conspiracy claim. While Rule 8 authorizes me to dismiss complaints that fail to give the Defendants notice, that remedy is generally saved for complaints that are truly unintelligible. *See, e.g., Crenshaw v. Antokol*, 206 F. App'x 560, 563 (7th Cir. 2006) (affirming dismissal of complaint where it was "difficult to tell what claims it raises, and [was] replete with confusing language, redundancies and irrelevant material"); *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (affirming dismissal where complaint was "so long, so disorganized, so laden with cross-references and baffling acronyms" as to be unintelligible). Crews's complaint has its problems, but unintelligiblility is not one of them. Count I alleges a straightforward discrimination claim, and Count III a § 1983 conspiracy claim. That's enough to satisfy Rule 8.

4

A.     **TITLE VII CLAIMS**

Crews has alleged Title VII claims against the City of Gary. Count I alleges Gary discriminated against her on the basis of sex when she was transferred. Count I also alleges Gary engaged in a regular practice of sex discrimination against female employees. Count IV alleges Gary retaliated against Crews for filing discrimination complaints.

Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. There is a "minimal pleading standard for simple claims of race or sex discrimination." *Tamayo*, 526 F.3d at 1084 (*citing EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 781-82 (7th Cir. 2007)). To avoid dismissal under Rule 12(b)(6), "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Id.; see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir.2014). Here, Crews has checked off the right boxes. She alleges that she was subjected to an adverse employment action when she was transferred to patrol, and she claims she was transferred because she was a woman [DE 38 ¶ 10]. That is enough to state a claim.

Defendants argue that the transfer does not qualify as an adverse employment action. Title VII requires a "significant change in the claimant's employment status." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). So a transfer would not qualify unless accompanied by other negative effects like reduced pay, reduced

career prospects, or major changes in working conditions. *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002).

Crews has alleged that she was transferred to a position with significantly worse working conditions as she was transferred from a "coordinator" position, which involved working with radios, to a street patrol position [DE 38 ¶¶ 5, 10]. She alleges the patrol position is "a less desirable position with more risk." *Id.* ¶ 10. Increased risk is a significant qualitative change in working conditions, especially for a police officer. *See Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 376 (7th Cir. 2009) (transferring police officer to dangerous foot patrol was an adverse employment action). Moreover, although she does not explicitly state this, it is possible to infer from the Complaint that the move from a technically sophisticated communications coordinator position to a patrol officer was a step downwards for Crews. *See Rhodes*, 359 F.3d at 504 ("reassignment to a position with significantly different job responsibilities" is an adverse employment action). At this stage, that's enough for this claim to go forward.

Crews's pattern-or-practice claim, on the other hand, is not sufficiently pled. Pattern-or-practice claims are a theory of intentional discrimination rather than separate claims. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Pattern-or-practice claims require a showing that an employer regularly and purposefully discriminated against a protected group - that discrimination was the company's standard operating procedure. *Id.* Crews has alleged that Gary engaged in a "policy, pattern, and practice of sexual harassment and discrimination against women" by transferring women who

6

insisted on compliance with standard operating procedure [DE 38 ¶ 33].

But Crews has alleged only one specific instance of discrimination — her own. The allegation concerning other women is entirely conclusory. Crews claims "there have been other women employed by the Defendants, such as Darlene Breitenstein, Shae Russell, amongst others who have been subjected to this ongoing sex discrimination" [DE 38 ¶ 20]. There's just not enough factual material here to nudge this claim into the realm of the plausible. Crews does not state how Breitenstein and Russell were discriminated against, who did it, when it occurred, or under what circumstances the discrimination took place. It is impossible to discern a pattern when Crews has not alleged any of the facts that supposedly make up the pattern. Accordingly, to the extent Count I alleges a pattern or practice claim, that claim must be dismissed.

Moving on to Count IV, Crews has pled enough facts to state a claim for retaliation. To plead a retaliation claim under Title VII, a plaintiff must allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result of that activity. *See Luevano v. Wal-Mart Stores, Inc.* 722 F.3d 1014, 1029 (7th Cir. 2013); *McKenzie v. Illinois Dept. of Transp.* 92 F.3d 473, 483 (7th Cir. 1996). Crews alleges she filed discrimination complaints with the EEOC, the Gary Human Relations Commission, and the Gary Police Civil Service Commission [DE 38 ¶¶ 16-18]. In retaliation, the Gary Police denied her request to transfer to an investigator position. *Id.* ¶ 27. She alleges that the Defendants lied to her about the reasons she didn't get the job and then filled the position with less senior employee. *Id.* ¶¶ 25-27.

This is enough. Filing a discrimination complaint is a statutorily protected activity. *See Tamayo*, 526 F.3d at 1085. And just as a transfer can be an adverse employment action, the denial of a transfer can be too, so long as the transfer would have resulted in higher pay, better benefits, or better conditions. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 900 (7th Cir. 2003) ("denial of an opportunity to move to [a higher paying] position, unlike the mere denial of a lateral transfer, constitutes a materially adverse employment action"). As with the transfer, Crews has not specifically pled that the investigator job would have brought her better pay or working conditions, but she has pled enough so that I can reasonably infer that to be the case.

Defendants argue that the six month gap in between Crews filing her EEOC complaint and the alleged retaliation is too long to support a retaliation claim. This argument is premature. While a long time interval weakens an inference of retaliation, it does not bar it. *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014), *reh'g denied* (Sept. 16, 2014); *Carlson*, 758 F.3d at 829 ("no bright-line timing rule can be used to decide whether a retaliation claim is plausible or whether it should go to a jury."). Although the timing weakens Crews's case, it is too soon to know whether the timing should end this case. This is an issue better left for determination at the summary judgment stage of the case after full discovery has been taken.

  **B.**  **§ 1983 CLAIMS**

Crews also alleges three § 1983 claims against Defendants Sormaz, Ingram and

8

the City of Gary. Count II alleges the Defendants violated Crews's Fourteenth Amendment right to equal protection. Count III alleges the Defendants conspired to violate her First and Fourteenth Amendment rights, and Count V alleges the Defendants violated her First Amendment right by retaliating against her for speaking out against discrimination.

As for Count II, equal protection claims alleging sex discrimination in public employment are held to the same standard as Title VII claims. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Rucker v. Gloe*, 432 Fed. App'x 631, 634 (7th Cir. 2011). So Crews has to allege that she was subjected to a specified adverse employment action because of her sex. *See Tamayo*, 526 F.3d at 1084. For the individual defendants, Sormaz and Ingram, Crews also has to allege that they personally participated in the constitutional deprivation. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

Crews has satisfied her burden with respect to Sormaz and Ingram. As I discussed, Crews has stated a claim for sex discrimination based on the transfer to patrol. And Ingram and Sormaz are both alleged to have personally participated in the act as Ingram ordered the transfer and Sormaz instigated it [DE 38 ¶ 10].

With respect to Gary, it's a different story. Crews cannot rely on the theory of *respondeat superior* to hold a municipality like Gary liable under § 1983. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). The municipality has to cause the constitutional injury. This means a municipality can be liable for a constitutional deprivation under § 1983

when the deprivation is caused by: (1) the municipality's express policy; (2) a wide-spread practice that is so permanent and well-settled as to constitute a custom or usage within the municipality; or (3) a person with final policymaking authority for the municipality. *See Calhoun v. Ramsey* , 408 F.3d 375, 379 (7th Cir. 2005). *See also Montaño v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008). Crews also has to allege that the policy or custom was the "moving force" behind the injury. *Id.*

Crews alleges Gary had a widespread, well-settled practice of intentionally discriminating against female police officers by transferring female officers who insisted on following protocol [DE 38 ¶ 37]. The problem with this claim is the same as the problem with the pattern-or-practice claim, Crews hasn't pled enough facts to establish a pattern of discrimination, let alone a widespread custom.

Crews has alleged one factual instance of discrimination and two conclusory instances. The single act of discrimination that Crews has been able to adequately plead is certainly not sufficient to support a claim against Gary. *See Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995) ("a single act of misconduct will not suffice; for it is the series that lays the premise of the inference"). But even if Crews had supported her claim that Breitenstein and Russell were discriminated against, it still would likely not be enough to establish a widespread practice of discrimination. *See Gable v. City of Chicago*, 296 F.3d 531, 538-39 (7th Cir. 2002) (dismissing claim pursuant to 12(b)(6) because the two alleged incidents of misconduct could not constitute a permanent and well-settled custom.); *Gustfason v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997) (dismissing a

claim based on isolated incidents of municipal misconduct).

Moving on, count III of the Complaint alleges a § 1983 conspiracy claim against the City of Gary, Sormaz, and Ingram. To state a § 1983 conspiracy claim, Crews needs to allege that the defendants reached an understanding to deprive Crews of her constitutional rights, and the defendants were willful participants in the joint activity with the State or its agents. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). A plaintiff must allege "the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). A plaintiff must also indicate the nature of the alleged conspiratorial agreement. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). According to the Complaint, the Defendants conspired to violate Crews's rights against sex discrimination and her rights to complain of discrimination. This violated Crews's rights under First and Fourteenth Amendments.

First off, Crews can't use the conspiracy claim to get around § 1983's limitations on derivative liability. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). In other words, *Monell* still applies. *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 787 (N.D. Ill. 2013) ("[T]he only way the City could be liable under [a conspiracy claim] is by virtue of the acts of its employees, yet municipalities cannot be held liable under § 1983 under a *respondeat superior* theory for the acts of their officers"). So, conspiracy or no, Crews has to plausibly allege that Gary had an established policy or widespread practice that was the moving force behind her injury. *Id.* And, as we have seen, she hasn't done so.

As for the claim against Ingram and Sormaz, the pleading standard for a

conspiracy is fairly lenient. It's enough if the complaint indicates the parties, general purpose and approximate date of the conspiracy. *Walker*, 288 F.3d at 1007. Crews has met this low bar. Crews alleges Sormaz and Ingram worked together in October to have Crews transferred, and did so in order to "violate [Crews's] constitutionally protected rights against sex discrimination and her rights to complain of this discrimination" [DE 38 ¶¶ 10, 42]. This verges on boilerplate, but Crews does identify the conspirators, the purpose, and the time of the conspiracy, and that is good enough for now. *See id.*; *Miller v. Fisher*, 219 F. App'x 529, 533 (7th Cir. 2007) (Complaint stated a claim for conspiracy when it identified the parties to the conspiracy, the approximate dates, and stated the purpose was "to attack [the Plaintiff]"); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (Complaint stated a claim for a § 1983 conspiracy when the conspirators were clearly identified, purpose stated, and the time frame identified).

Finally, in Count V, Crews alleges a § 1983 retaliation claim. In order to state a claim, she has to plausibly allege that (1) she engaged in constitutionally protected speech; (2) the Defendants, as public officials, engaged in adverse conduct against her; and (3) the Defendants were motivated, at least in part, by her protected speech. *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008).

The sticking point with this claims is over whether Crews has alleged that she engaged in constitutionally protected speech. Speech is constitutionally protected if it is on a matter of public concern and the employee's interest in commenting on the issue

outweighs the employer's interest in providing efficient public services. *Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1099 (7th Cir. 2004). Crews alleges that she was speaking about sex discrimination, which is, of course, an important issue. But my inquiry into whether speech is a public concern goes beyond the subject matter of the speech. Even if Crews was speaking on a subject that would be of interest to the public, the speech won't be protected if the point of the expression was to further some purely private interest. *Bivens*, 691 F.3d at 561; *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010) ("Purely personal grievances do not garner First Amendment protection, including personal grievances about sexual harassment in the workplace") (citations omitted).

Crews claims she engaged in constitutionally-protected speech on two occasions. First, when she refused to give Sormaz a radio, and second, when she filed complaints with the EEOC, Civil Service Commission, and Civil Rights Commission after her transfer. With respect to the incident with the radio, Crews alleges "Officer Crews advised her superior, Sgt. Sormaz that the standard operating procedures required a written order" and then "complained of the acts against her by going to Chief Wade Ingram" [DE 38 ¶¶ 9, 13]. With respect to the complaints, Crews simply alleges she "filed a Complaint with the Gary Human Relations Commission alleging sex discrimination" and "filed a Verified Complaint with the City of Gary Police Civil Service Commission complaining of the Defendants' acts and failures to act" [DE 38 ¶¶ 16-17].

13

The allegations make it clear that Crews's statements were about her, her experience, and her job. There are no allegations suggesting Crews was interested in bringing bad behavior to light, sounding the alarm about a pattern of harassment, or engaging in a public dialogue about sex discrimination. Instead, Crews was narrowly focused on redressing her specific grievance over her job. That is not sufficient to support a § 1983 retaliation claim. *Trent*, 591 F.3d at 561-62 (holding an internal union grievance regarding workplace conditions was not protected speech); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989) (allegations that employee complained to supervisors about sexual harassment were not sufficient to state a cause of action under § 1983 as the complaints related solely to personal problems ); *Wilhem v. City of Calumet City, Ill.*, 409 F. Supp. 2d 991, 998 (N.D. Ill. 2006) (EEOC charges were not speech on a matter of public concern because they were expressions of personal grievance against the city); *Bibbs v. Newman*, 997 F. Supp. 1174, 1186 (S.D. Ind. 1998) (EEOC charges and Indiana Civil Rights Commission complaint of harassment were not speech on matters of public concern).

## CONCLUSION

For the reasons stated above, the Motion to Dismiss [DE 43]is **GRANTED** in part and **DENIED** in part. Count I of the Third Amended Complaint [DE 38] is **DISMISSED** to the extent Plaintiff states a pattern-or-practice claim. Counts II and III are **DISMISSED** as to Defendant City of Gary. Count V is **DISMISSED**. The motion is **DENIED** with respect to the remaining counts.

14

**SO ORDERED**.

ENTERED: November 19, 2014          s/ Philip P. Simon
                                    PHILIP P. SIMON, JUDGE
                                    UNITED STATES DISTRICT COURT